Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on 7 May 1998, which is incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. National Union Fire Insurance Company was the carrier on the risk, with AIG Claim Services as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issue for determination is whether plaintiff has contracted a compensable occupational disease and, if so, to what benefits may she be entitled under the Act.
5. Based upon the Form 22, plaintiffs average weekly wage was $730.77, which yields a compensation rate of $527.20.
6. Twenty-six pages of medical reports, marked as Stipulated Exhibit 1, are received into evidence.
 ***********
Based upon all of the competent evidence adduced from the record, and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a thirty-seven year old right hand dominant female. She worked as a loan processor for defendant Credit Union in 1984, after which she left to attend school in 1985. Plaintiff was rehired by defendant-employer in 1987 as a loan officer. She was promoted to Vice-President at the Shallotte Branch office.
2. Plaintiffs duties included seeing credit union members, hand writing loan information, calculating loan ratios on an adding machine, typing data into the computer to process loans or credit applications, and writing letters. Plaintiff processed personal and automobile loans. She performed handwriting and loan ratio calculations with her right hand, while typing was done with both hands. In addition to handling all loans, plaintiff also performed other tasks as needed, due to staffing vacancies.
3. On an average basis, plaintiff performed handwriting and computer entry duties for six hours of her eight-hour work day.
4. In 1992, plaintiff began to experience right hand pain for which she sought medical treatment. Dr. Moore diagnosed her with tendinitis.
5. Plaintiff began to experience bilateral hand pain in late 1996. On 15 August 1997, she sought treatment for bilateral hand pain from Dr. Richard Leighton, an osteopathic physician and orthopedic surgeon. Following an examination and testing by Dr. Leighton, plaintiff was diagnosed with deQuervains tendinitis and bilateral carpal tunnel syndrome.
6. Plaintiff did not have hypothyroidism, diabetes, rheumatoid arthritis, wrist fracture or neck problems; therefore, Dr. Leighton causally related her bilateral carpal tunnel syndrome to repetitive-type trauma from her job duties.
7. Dr. Leighton referred plaintiff to Dr. Charles D. Hall, a neurologist. Dr. Hall agreed with the diagnosis of bilateral carpal tunnel syndrome, based on plaintiffs history, his examination, and nerve conduction studies. He suggested alternatives to plaintiffs performance of her job duties, and proceeded with conservative treatment consisting of wrist splints, and medication.
8. After plaintiff failed to respond to conservative treatment, both Dr. Leighton and Dr. Hall recommended carpal tunnel release surgery. However, plaintiff became pregnant and her surgery was postponed.
9. Dr. Leighton and Dr. Hall both stated to a medical degree of certainty that plaintiffs job duties placed her at an increased risk over that of the general public for developing carpal tunnel syndrome. The undersigned find as fact that plaintiffs job duties placed her at an increased risk of developing carpal tunnel syndrome over that of the general public; that this condition is characteristic of and peculiar to her duties, and that plaintiffs job duties caused her carpal tunnel syndrome.
10. Dr. George Edwards, Jr., a board certified orthopedic hand specialist, reviewed the videotape of plaintiffs job and her treatment records. Dr. Edwards opined that plaintiffs job duties lacked the repetitiveness associated with job-related carpal tunnel syndrome. The undersigned give Dr. Edwards opinion less weight than the opinions of Drs. Leighton and Hall.
11. Plaintiff has not missed any time from work as a result of her carpal tunnel syndrome, but she has incurred medical expenses.
12. Plaintiff has not reached maximum medical improvement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. 97-53(13). This requires plaintiff to show that (1) the disease is characteristic of a trade or occupation; (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101(1981). Plaintiff has proven by the greater weight of the evidence that she contracted bilateral carpal tunnel syndrome, a compensable occupational disease, within the meaning of N.C. Gen. Stat. 97-53(13). Plaintiffs job duties with defendant-employer caused her bilateral carpal tunnel syndrome and placed her at an increased risk over the general public of developing bilateral carpal tunnel syndrome.
2. As a result of the compensable occupational disease, plaintiff is entitled to have defendants pay medical expenses incurred, or to be incurred, which may be necessary to effect a cure, provide relief or lessen her period of disability. N.C. Gen. Stat. 97-2(19); 97-25.
3. Plaintiff has not reached maximum medical improvement.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for medical treatment incurred or to be incurred as a result of plaintiffs compensable bilateral carpal tunnel syndrome, including such surgery as may be required.
2. Plaintiffs attorney is entitled to a reasonable attorneys fee. Since no indemnity benefits have been awarded herein, the amount of such attorneys fee is reserved for subsequent determination.
3. Defendants shall pay the costs.
This the ___ day of May, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER