* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to receive further evidence and upon reconsideration of the evidence, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between Plaintiff and Defendant-employer at all relevant times hereto. *Page 2 
3. Defendant-employer was insured for workers' compensation coverage at all relevant times hereto.
4. Plaintiff's average weekly wage on the date of her alleged injury was $348.09, yielding a compensation rate of $232.07 per week.
5. Plaintiff alleges injury to her cervical spine in the course and scope of employment on or about February 29, 2004, pursuant to N.C. Gen. Stat. § 97-2(6), which Defendant denies.
6. Plaintiff was out of work following her alleged February 29, 2004, accident and temporary total disability benefits have not been paid for that time period.
7. The parties stipulated to entering into the record the Pretrial Agreement, medical records, two job videos, and a duffle bag.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the hearing before the Deputy Commissioner, Plaintiff was 55 years of age. She lives in Murphy, North Carolina and obtained a high school diploma and a one-year degree in cosmetology.
2. Plaintiff has a significant history of cervical conditions and pain. Specifically, Plaintiff underwent a micro-cervical posterior foraminotomy, C5-6 right, with removal of multiple extruded disk fragments, as well as repair of a ruptured disc at T1-2, on February 12, 1991, performed by Dr. Lary Schulhof. Plaintiff also sought treatment from her chiropractor, F. Mark Baker, D.C., from August 3, 1999 to September 9, 1999, for low back pain, which resolved. *Page 3 
3. At the time of the posterior foraminotomy, Plaintiff was working as a seamstress at Levi Strauss and continued to do so until the plant closed in 1999.
4. Plaintiff also had treatment for depression and migraine headaches. When Plaintiff received treatment for headaches in 2000, 2001 and 2003, cervical issues were also noted. In October 2002, Plaintiff presented to Dr. Gowin, a rheumatologist, who diagnosed Plaintiff with several conditions, including arthritis, fibromyalgia and scoliosis.
5. Plaintiff worked for Defendant-employer beginning on April 20, 2003, as a sewing machine operator. Plaintiff's first assignment with Defendant-employer was working with cargo bags. She had no problems with these larger bags that required little twisting and turning for the sewing operation.
6. In late 2003, Defendant-employer instituted a plant-wide layoff; however, Plaintiff was rehired as a Sewing Operator in January 2004. Upon her return to work, Plaintiff was trained to sew duffle bags, a new production line for Defendant-employer. Plaintiff was to manually sew ten rows of crown tacks on each duffle bag. To complete the stitching, Plaintiff was required to turn the bag approximately nine times while holding its straps.
7. After a two-week training period, Plaintiff and other Sewing Operators began sewing duffle bags on January 28, 2004. Plaintiff was moved to a sewing machine table that she believed to be too high for her to reach comfortably. This particular sewing machine also could not sew "backwards" stitching, which increased the twisting and turning necessary to complete Plaintiff's task. Plaintiff requested Defendant-employer to adjust her table appropriately, which was not done at that time.
8. In late February 2004, approximately three weeks after Plaintiff completed her training period and started sewing duffle bags fulltime, Plaintiff began experiencing neck and *Page 4 
shoulder pain that would not go away and became severe. Plaintiff then returned to her chiropractor, Dr. Baker, on Thursday, March 4, 2004, complaining of "a crick in her neck for past two weeks". Plaintiff did not indicate a cause or precipitating event for her pain at that visit.
9. On Monday, March 8, 2004, Plaintiff presented to Dr. Baker reporting she had begun to experience severe neck pain the previous Friday. In addition, she stated she engaged in "strenuous work" for Defendant-employer and her sewing machine was not properly set for her. Dr. Baker thereafter provided Plaintiff with a note indicating she would be able to return to work on March 20, 2004, but her machine was not ergonomically correct for her and should be adjusted or Plaintiff should be transferred to a different machine.
10. Upon her return to work, Plaintiff presented her supervisor with Dr. Baker's note. Plaintiff's supervisor thereafter placed Plaintiff in a top hem sewing position and later in a pad/strap stitching position.
11. On March 18, 2004, Plaintiff underwent a cervical MRI that revealed significant right-sided degenerative changes at C5-6 where the prominent osteophyte disc complex caused advanced foraminal encroachment and exiting nerve root compression.
12. On or about March 19, 2004, Plaintiff informed Defendant-employer that despite the job change and recent treatment she was still experiencing significant pain and problems with her neck and shoulder. On March 24, 2004, Defendant-carrier took the recorded statement of Plaintiff and subsequently denied compensability by way of a Form 61 dated April 5, 2004.
13. On March 30, 2004, Plaintiff voluntarily ended her employment with Defendant-employer and has not returned to work as of the date of the hearing before the Deputy Commissioner. On March 31, 2004, Plaintiff saw Dr. Gowin for increased neck pain and has continued to treat with him for this and other conditions. *Page 5 
14. On April 5, 2004, Dr. Baker requested Defendant-employer refer Plaintiff to one of their medical doctors to determine Plaintiff's work ability. During this time, Plaintiff had group health insurance through her husband's employer that paid for treatment related to this injury.
15. On April 13, 2004, Plaintiff returned to her former spine surgeon, Dr. Schulhof, for evaluation of her continued neck and shoulder pain. Dr. Schulhof performed a diskectomy and foraminotomy on April 20, 2004, at Mission Hospitals. On May 21, 2004, in a postoperative examination, Dr. Schulhof noted that Plaintiff did well initially, but then her right shoulder pain and numbness into the right hand recurred.
16. On July 27, 2004, Plaintiff was evaluated by Dr. Christine Kaga of Franklin Orthopaedic Sports Medicine for her continued right shoulder pain. Dr. Kaga diagnosed impingement syndrome and recommended physical therapy, which Plaintiff began on August 6, 2004, and continued through January 3, 2005. On March 8, 2005, Plaintiff returned to Dr. Kaga complaining of bilateral shoulder pain, left greater than right. Dr. Kaga referred Plaintiff back for physical therapy, this time for bilateral shoulder pain. Plaintiff participated in physical therapy from March 14, 2005 through May 2, 2005. Without much improvement in physical therapy, Dr. Kaga ordered an MRI of Plaintiff's left shoulder that was performed on May 6, 2005. This MRI revealed degenerative changes at the left acromioclavicular joint.
17. On June 16, 2005, Plaintiff presented to Dr. Schulhof for a one-year postoperative evaluation. Dr. Schulhof noted that Plaintiff's neck was doing reasonably well, although she had chronic pain. On July 7, 2005, Dr. Schulhof assigned a 10% permanent partial impairment rating to Plaintiff's back and released Plaintiff to return to work with the restrictions that she refrain from lifting more than 15 pounds and work at eye level. *Page 6 
18. On June 28, 2005, Dr. Kaga performed a steroid injection to Plaintiff's left shoulder.
19. On July 20, 2005, Plaintiff returned to mental health counselor, Mary Ricketson, M.A., Ed., to aid in dealing with her physical limitations. Plaintiff complained of the inability to concentrate, feeling useless, agoraphobia and significant pain that interfered with sleep.
20. Dr. Frank Miller, a psychiatrist, evaluated Plaintiff on January 13, 2006, and found Plaintiff to be credible. Dr. Miller noted Plaintiff had "frequent" symptoms sufficient to interfere with attention and concentration and only a "moderate" ability to deal with stress.
21. Plaintiff returned to Dr. Schulhof on March 6, 2006, still complaining of neck and shoulder pain with numbness into her upper extremities. Following another MRI scan, Dr. Schulhof performed another neck surgery on April 4, 2006, to revise the old fusion and do a new fusion for the whole section.
22. Plaintiff underwent a vocational evaluation by vocational expert, Randy Adams, M.Ed., C.V.E. In his prior assessments, Mr. Adams had been to Defendant-employer's plant and was familiar with the operation and job positions. Mr. Adams thought, considering Plaintiff's psychological and physical deficits, combined with her geographic location in Murphy, North Carolina, it would be futile to complete a labor market survey.
23. The Full Commission finds that Plaintiff has failed to prove by the greater weight that her physical symptoms or conditions are causally related to any alleged accident or specific traumatic event occurring on or about February 29, 2004, or any occupational disease. The medical records and post-hearing depositions demonstrate each medical provider provided less than definitive opinions regarding the nature and cause of Plaintiff's conditions and symptoms. *Page 7 
24. Although Dr. Baker initially provided Plaintiff with a work note indicating Plaintiff's sewing machine height must be adjusted in order to further prevent exacerbation of her injury, Dr. Baker subsequently opined Plaintiff's condition was not related to her job duties and was instead a long-term condition which took years to develop, although he later noted that Plaintiff's work could have aggravated her neck and shoulder conditions.
25. Although Dr. Schulhof testified Plaintiff's pain was aggravated and exacerbated by her work activities, he was unable to provide a definitive and certain opinion regarding whether Plaintiff's cervical spondylosis worsened due to her work activities and motions, and he opined Plaintiff was experiencing a degenerative condition which was not likely to have been aggravated or accelerated by her work activities.
26. While Dr. Kristin Gowin, Asheville Arthritis Osteoporosis Center, opined Plaintiff's work activities aggravated her shoulder problems and accelerated her cervical problems, Dr. Gowin also noted Plaintiff's condition continued to worsen following the end of her employment. During her deposition, Dr. Gowin was shown Stipulated Exhibit 4, a two-minute video recording of Plaintiff's position that included a voice-over description of Plaintiff's duties, a comparison of the duties and conditions depicted on the video with Plaintiff's duties and workstation, and a depiction of Plaintiff demonstrating the movements she would have made when performing her duffle bag sewing duties. Dr. Gowin had no knowledge of the requirements of Plaintiff's position prior to her deposition and after being shown the videotape, Dr. Gowin was unable to recall whether the majority of Plaintiff's movements were with her right or left upper extremity.
27. The Full Commission finds that there is insufficient evidence of record to establish that Plaintiff's position with Defendant-employer placed her at an increased risk of *Page 8 
developing any neck, back or upper extremity condition. Although Dr. Gowin testified the motions and movements depicted on Plaintiff's video would be more likely to cause Plaintiff to experience neck and shoulder problems than other individuals who were not performing those motions, she further testified there was "nothing unique or special" about Plaintiff's duties when compared to other workers who perform activities requiring similar movements, and she noted a "significant number" of the general public was exposed to repetitive activities which were not dissimilar from those depicted on the videotape. Dr. Gowin did not provide a definitive opinion regarding what conditions or symptoms were related to the requirements of Plaintiff's position. Therefore, the Full Commission finds Dr. Gowin's opinion to be based on insufficient evidence and too speculative to be of probative value.
28. The Full Commission finds that Plaintiff has failed to prove that any psychological conditions she is or was experiencing are related to any alleged work-related injury by accident, specific traumatic incident, or occupational disease. Dr. Frank Miller, of WNC Psychiatric Consultants was unable to offer a definitive or credible opinion regarding the causal relationship between Plaintiff's psychological symptoms and her alleged work-related injuries.
29. Although Counselor Mary Ricketson responded to a questionnaire presented by Plaintiff's counsel and noted Plaintiff's psychological condition was caused by her alleged work-related incident of February 29, 2004, Plaintiff had not seen Counselor Ricketson between February 2000 and July 2005. During her deposition, Counselor Ricketson acknowledged Plaintiff had previously treated with her for significant mental health issues prior to February 29, 2004, and had previously been diagnosed as "very depressed." She thought Plaintiff suffered from the same symptoms she suffered from in July 2005, and was experiencing psychological *Page 9 
symptoms which were consistent with her inability to take estrogen. Since Counselor Ricketson had not treated plaintiff during times relevant to this claim, the Full Commission gives her opinion regarding Plaintiff's state of mind between March 2004 and July 2005 little weight.
30. Based upon the evidence of record, the Full Commission finds that Plaintiff has failed to prove that she sustained an injury by accident, specific traumatic incident arising out of the course and scope of her employment with Defendant-employer or an occupational disease due to causes and conditions characteristic of and peculiar to her employment.
31. The Full Commission finds that Plaintiff has failed to meet her burden of demonstrating that any disability she may have is a result of a compensable injury by accident, specific traumatic incident, or occupational disease.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. A.C.Lawrence Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). Plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between her work and the disability for which compensation is sought. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980). Thus, Plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of her employment with *Page 10 
defendant on February 29, 2004. N.C. Gen. Stat. § 97-2(6); Anderson v.Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951).
3. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease under N.C. Gen. Stat. § 97-53(13). This requires plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles,304 N.C. 44, 283 S.E.2d 101 (1981).
4. In the instant case, Plaintiff has failed to establish by the greater weight of the evidence that her condition was characteristic of and peculiar to her employment, that she was at an increased risk of developing the condition due to his work, or that her condition was caused by the work. Hansel v. Sherman Textiles, supra. Thus, plaintiff did not contract a compensable occupational disease arising out of and in the course of her employment with Defendant-employer. N.C. Gen. Stat. § 97-53(13).
5. Plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2 et seq.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, this claim must be and is hereby denied.
2. Defendants shall pay the expert witness fees, in the amount of $600.00 for Dr. Gowin and $225.00 for Dr. Baker. *Page 11 
3. Each side shall pay their own costs.
This the ___ day of February 2008.
S/______________________ PAMELA T. YOUNG CHAIR
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________________ DANNY L. McDONALD COMMISSIONER *Page 1