The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Willis and upon the briefs of counsel. Both counsel waived oral argument. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * * *
Following the hearing in Charlotte on 9 June 1994 the record remained open to allow the parties to produce additional evidence. Since that time, the parties have submitted the depositions of Dr. Edward Landis, Jr.; Dr. Robert Fenning; Jerry Lee Carriker (lead person in defendant's paint shop); and Mary Ann White (production painter). In addition to the evidence accepted at the hearing, these documents are hereby made a part of the record of this case; and all objections raised by counsel are hereby OVERRULED.
* * * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing and in a Pre-Trial Agreement dated 9 June 1994 as:
STIPULATIONS
1. The Industrial Commission has jurisdiction over the parties and the subject matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times in this matter.
4. Zurich America Insurance Group was the carrier of workers' compensation insurance for the defendant-employer on the relevant dates in this matter.
5. Plaintiff's average weekly wage on the relevant dates was $570.81
6. Plaintiff received temporary total disability compensation from defendants form 10 December 1992 through 14 May 1993 in the total amount of $6,730.64, at which time defendants terminated compensation and denied the claim.
The parties by and through counsel have agreed to stipulate the following medical records into evidence:
a) All records of Dr. Robert L. Fenning.;
 b) Letter of 7 September 1993 from Dr. Landis to Catherine B. Kittles;
 c) Report of Dr. Landis dated 12 February 1993 with attachments; :
d) All other relevant Medical records.
* * * * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the hearing before former Deputy Commissioner plaintiff was 58 years old, having been born on 11 February 1936. Plaintiff had completed high school and courses from Central Piedmont Community College. Plaintiff had worked for nine years as a short-order cook and for 16 years as a machine operator at Lance before beginning work with defendant. Plaintiff's medical history included: high blood pressure cervical cancer, tendinitis, diabetes, depression, a hiatal hernia, asthmatic bronchitis (1987) and foot surgery. Plaintiff smoked about a pack per day of cigarettes for 34 years between 1952 (plaintiff 16 years old) and 12 December 1986. Plaintiff had a very good attendance record while working with defendant.
2. Defendant manufactures dental supplies. Plaintiff began working for defendant on 10 November 1980. For eight years she was a stock attendant, and for one year she assembled dentist chairs. Beginning 6 March 1989 plaintiff was transferred to the painting department. For two years plaintiff worked in the paint department in Plant No. 1, where primarily liquid paint was used. Ms. Morrow started as a primer in the paint department, which involved applying a primer coat to products in preparation for painting. Primer was a liquid which was applied with a spray gun to products as they passed through a paint booth on an overhead conveyor.
3. During the time that she worked in the paint room at Pelton and Crane, Ms. Morrow wore protective clothing that consisted of overalls, a hat and a respirator. Ms. Morrow testified that she could smell the fumes from the primer even when she was wearing her respirator. At the end of each shift, she had to clean her spray gun with lacquer thinner, which she could also smell through her respirator. After approximately six months as a primer, she was moved to the texturing department, which involved application of a liquid spray which had a detectable odor through her respirator.
4. Ms. Morrow was next moved to the painting department, where she used both liquid and powder paint. She worked in Plant 1 from March of 1989 until November of 1991, when she was transferred to the paint department in Plant 2. She used both liquid and powder paint in Plant 2. At times, it was necessary to get inside the paint booth to apply the paint. On days when she applied the powder paint, it would leave residue on her clothing, on her face and in her hair.
5. Near the end of 1991, Ms. Morrow began having headaches, shortness of breath, and became sleepy and dizzy while working in the paint room. She also experienced problems with excessive sweating. In October 1992, Ms. Morrow fell while working in the paint room, and her employer scheduled her for a breathing test. Ms. Morrow also began coughing up phlegm every morning. She has been unable to work since December of 1992, and cannot walk a full block without having to rest.
6. Marcia Ingram, the benefits administrator for Defendant, testified that Ms. Morrow's job attendance was very good until December of 1992.
7. Following her breathing test, Ms. Morrow was referred to her family physician of thirty-plus years, Dr. Fenning, a board certified internist, hematologist and oncologist. He expressed the opinion that she suffered from an occupational disease. His diagnosis was chronic obstructive pulmonary disease (COPD), secondary to her exposure to paint fumes at Pelton and Crane. Dr. Fenning's letter of June 19, 1993 stated: "Ms. Morrow is not able to perform in that area that she was working before. She is not able to be exposed to the paint fumes that I think are responsible for her lung disease."
8. Dr. Fenning testified that Plaintiff's employment in the paint room at Pelton and Crane placed her at an increased risk, compared to the public generally, of contracting COPD, and the Full Commission so finds. He stated that her exposure to conditions in the paint room significantly contributed to her now diagnosed lung condition, and the Full Commission so finds. Dr. Fenning also expressed the opinion that Plaintiff was not able to work in any meaningful employment due to her disability associated with COPD and that exposure to such conditions and fumes was a significant causal factor in the development of Ms. Morrow's lung impairment, and the Full Commission so finds.
9. The Full Commission finds that plaintiff's chronic obstructive pulmonary disease was caused by or significantly aggravated by conditions of her employment with defendant. The Full Commission also finds that plaintiff's chronic obstructive pulmonary disease is a disease which is characteristic of and peculiar to her employment with defendant-employer, and not an ordinary disease of life to which the public is equally exposed outside of the work environment.
10. On cross-examination by Defendants' attorney, Dr. Fenning pointed out that Ms. Morrow had no lung problem prior to her exposure to fumes at Pelton and Crane. Defendants then sent Ms. Morrow to Dr. Landis for a second opinion. Dr. Landis was asked, "Do you have an opinion as to whether or not Ms. Morrow's exposure to paint fumes at Pelton and Crane significantly contributed to COPD?" His answer was, "It could have aggravated it, but I don't think that's what caused it." He testified that she was a reactor to respirable irritants, and therefore exposure to paint fumes would aggravate or exacerbate her lung problems. It was his opinion that Plaintiff's COPD was multifactorial, and that paint fumes could have been one of the causes. Dr. Landis acknowledged that people exposed to paint fumes may be at an increased risk of contracting COPD, compared to the general public. Dr. Landis stated that Plaintiff's onset of symptoms could be related to exposure to paint fumes, and could have aggravated and worsened her condition. Finally, he stated that he was not saying paint fumes can't cause COPD, but acknowledged it was not a common cause. Dr. Landis agreed with Dr. Fenning's opinion that Ms. Morrow is permanently and totally disabled from any gainful employment.
11. Dr. Landis saw Plaintiff on one occasion to render an opinion at the request of counsel for Defendant. Dr. Landis testified that he had limited experience dealing with persons who had pulmonary problems as a result of exposure to paint fumes. Dr. Landis testified that he was familiar with Dr. Fenning and considered him to be an "excellent physician." The testimony of Dr. Landis also contained the following dialogue:
 Q. "You indicated in diagnosing COPD, probably the most important factor would be the medical history. Is that correct?
A. Correct.
 Q. Would you agree that Dr. Fenning, who treated this lady essentially continually since the `60's — I believe it was the `60's — and had seen her on a regular basis since that time would be in a better position to be familiar with her medical history than you, who only saw her on one occasion?
A. Her overall medical history, yeah.
 Q. And her medical history as it would relate to her breathing problems or her symptoms of breathing problems?
 A. Not necessarily. It depends on what you're looking for at the time and what questions you ask as to what — I can't speak for Dr. Fenning and what he actually did. If you look at most of his notes, they're relatively brief in dealing with an acute problem and they didn't go into a lot of detail.
 Q. But Dr. Fenning might have had actual knowledge of a historical basis that's not reflected in his notes that would put him in a better position to —
A. That's correct."
12. Thus, Dr. Landis acknowledges Dr. Fenning was in a better position to know Plaintiff's history, which is the key factor in diagnosing COPD.
13. As the result of her occupational disease, chronic obstructive pulmonary disease, and based on her age, education and work experience, plaintiff has lost the capacity to earn any wages in any employment and shall continue in such incapacity for the remainder of her lifetime.
14. Plaintiff's average weekly wage was $570.81 which yields a compensation rate of $380.73.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage was $570.81 which yields a compensation rate of $380.73. G.S. § 97-2 (5).
2. N.C. GEN. STAT. 97-53 (13) requires a claimant to prove the existence of a compensable occupational disease must show: (1) the disease must be characteristic of a trade or occupation, (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment, and (3) there must be a proof of causation, i.e., proof of a causal connection between the disease and the employment. Hansel v.Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101 (1981). Plaintiff has met her burden of proof on all three elements. G.S. § 97-53
(13).
3. As the result of her occupational disease plaintiff has been permanently and totally disabled from 15 May 1993 and therefore is entitled to ongoing benefits at the rate of $380.56 per week pursuant to G.S. § 97-29 for the remainder of her lifetime unless she undergoes a change of condition.
4. As the result of her occupational disease plaintiff is entitled to have defendants pay for all reasonable medical expenses incurred or to be incurred. G.S. § 97-25.
* * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay to plaintiff permanent and total disability compensation at the rate of $380.73 per week from 15 May 1993 and ongoing for the remainder of her lifetime, unless she should undergo a change of condition. (Defendants had already paid temporary total compensation through 14 May 1993). The amount of this award which has accrued shall be paid to plaintiff in a lump sum payment. Interest at 8 per cent per annum shall be paid from 9 June 1994, the date of the hearing below. This award is subject to the attorney's fee hereinafter provided.
2. Defendant shall pay for all reasonable medical expenses incurred or to be incurred as the result of plaintiff's occupational disease.
3. An attorney's fee of twenty-five (25) percent of the compensation awarded hearing is approved for counsel for plaintiff. Said amount having already accrued shall be deducted from that amount owed to plaintiff and paid directly to counsel for plaintiff. Thereafter, plaintiff's attorney shall get every fourth check.
4. Defendants shall pay the costs, including an expert witness fee in the amount of $350.00 to Dr. Fenning and $350.00 to Dr. Landis.
 S/ _________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ COY M. VANCE COMMISSIONER
DISSENTING:
See Dissenting Opinion of Commissioner Sellers
S/ _________________ DIANNE C. SELLERS COMMISSIONER