The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At the time of the alleged occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The General Adjustment Bureau was the carrier on the risk.
4. Plaintiff's average weekly wage was $252.00.
In addition, the parties stipulated into evidence the following: a recorded statement made by the plaintiff to Darryl Readdy on May 31, 1994; Pre-Hearing Interrogatories Propounded to the plaintiff; a denial of benefits from the General Adjustment Bureau to the plaintiff; and the medical records of Dr. Lucas Van Tran, Dr. Johnny Jones, Dr. Steven Kouba, Dr. Frank Clark and Dr. Grant Alleyne.
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
FINDINGS OF FACT
1. Plaintiff is a thirty-eight year old married female, and the mother of one son. She has been employed at Morrison's Cafeteria for nearly fourteen years. Her work at Morrison's Cafeteria includes serving salads from the line and preparing salads which includes chopping, cutting, and peeling salad materials. Plaintiff works for seven and a half hours a day, five days a week, taking a half hour break. Plaintiff did not work for a two year period as a result of a pregnancy.
2. In January or February of 1994, plaintiff began having difficulties in her hands, wrists and shoulder. On April 19, 1994, she felt a numbness and tingling in her hand and wrist and a sharp stabbing pain in her wrist which caused her to drop a knife.
3. Whether or not plaintiff had difficulties or had been clinically diagnosed for carpal tunnel syndrome prior to 1994 is disputed, and plaintiff's testimony is not consistent on this point. Plaintiff indicated that she had not had any pain in her hands or sought treatment prior to January of 1994. However, there is a note in her medical records from Dr. Johnny Jones, her family physician, indicating a clinical diagnosis of bilateral carpal tunnel syndrome which occurred before plaintiff's pregnancy and return to work in November of 1992.
4. Plaintiff's supervisor at Morrison's Cafeteria, Mr. Robert Reevis, does not recall any reports of pain in plaintiff's hands being reported to him. Mr. Reevis also disputes the repetitive nature of plaintiff's work, stating that she did not perform the same continuous motion all day. Moreover, according to Mr. Reevis, plaintiff overstated the quantity of items prepared as well as the time spent preparing each item. According to Reevis, plaintiff is the only employee to suffer from carpal tunnel syndrome.
5. Plaintiff bought wrist braces and wore them to her job but did not seek medical attention at the time. (April, 1994)
6. Plaintiff was referred to Dr. Lucas Van Tran on May 9, 1994 through her family physician, Dr. Johnny Jones. Dr. Tran scheduled nerve conduction studies and diagnosed plaintiff as having bilateral carpal tunnel syndrome. In a letter to plaintiff, Dr. Van Tran indicated that he was unable to make a statement about the causation of plaintiff's bilateral carpal tunnel syndrome. However, Dr. Van Tran did refer plaintiff to Dr. Steven Kouba.
7. Plaintiff presented to Dr. Kouba and received cortisone injections, was placed in splints, and told to take Motrin for six weeks. Dr. Kouba was under the impression that plaintiff's carpal tunnel syndrome was of a chronic nature which had developed prior to 1994 and that plaintiff had received substantial medical attention prior to her referral. The evidence, including Dr. Jones' note suggests that plaintiff had been diagnosed and treated for carpal tunnel syndrome prior to 1989. Dr. Kouba recommended surgery if there were no relief.
8. Since conservative treatment did not relieve plaintiff's symptoms, surgery was the alternative. On August 22, 1994, plaintiff underwent a left carpal tunnel release. By September, plaintiff was considering a right carpal tunnel release, but had no complaints about the surgery on her left hand and no contraindications.
9. By October 10, 1994, when Dr. Kouba saw plaintiff again, plaintiff indicated that she had some numbness and tingling in her left hand although most of it had been resolved. Plaintiff was advised to make an attempt to return to work at that time. By late November 1994, plaintiff returned to Dr. Kouba to discuss a release involving her right hand. At that time she presented with positive Tinells and Phalens at the right wrist.
10. Plaintiff's salad preparation and cleaning chores required constant use of her hands but not necessarily in a fashion involving repetitive flexion, extension, rotation or deviation of the wrists.
11. Carpal tunnel syndrome is a group of symptoms caused by pressure on the median nerve. There are hundreds of causes of carpal tunnel syndrome including obesity, pregnancy, diabetes, trauma and unknown causes.
12. Dr. Van Tran was plaintiff's initial treating physician but he declined to speculate on the cause of her carpal tunnel syndrome. Dr. Kouba's testimony indicated that carpal tunnel syndrome is a common disorder with many causes and it was "possible" that plaintiff's symptomology was caused by her job at Morrison's. However, Dr. Kouba's opinion was that the cause or origin of plaintiff's disease was pure speculation on his part rather than based upon medical probability.
14. There is no credible or convincing medical evidence or medical testimony that plaintiff's work at Morrison's Cafeteria caused her carpal tunnel syndrome. Moreover, Dr. Kouba could not and did not supply testimony that plaintiff's alleged occupational disease was peculiar to, or characteristic of her employment. Dr Kouba was not familiar with plaintiff's job duties and stated it would be pure conjecture on his part to suggest that her job played a role in the development of plaintiff's carpal tunnel syndrome.
15. There is no credible or convincing evidence to support a finding that plaintiff's employment with Morrison's Cafeteria placed her at an increased risk of developing carpal tunnel syndrome as compared to members of the general public not so employed. Neither is there credible or convincing evidence that carpal tunnel syndrome is not an ordinary disease of life to which the general public is exposed equally with the plaintiff in her particular trade and occupation. In other words, there is no credible or convincing evidence that carpal tunnel syndrome was due to causes and conditions which are characteristic of and peculiar to plaintiff's particular trade, occupation or employment as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment.
16. Plaintiff has not sufficiently or convincingly proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which was not an ordinary disease of life to which the general public was equally exposed.
Based upon the foregoing stipulations and findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff has not sufficiently or convincingly proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which was not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
2. In order to prove the existence of a compensable occupational disease under N.C. Gen. Stat. § 97-53(13), plaintiff must establish three elements:
(1) The disease must be characteristic of a trade or occupation;
 (2) The disease is not an ordinary disease of life to which the public is equally exposed outside of the employment;
 (3) There must be proof of causation, i.e. proof of a causal connection between the disease and the employment. Hansel v. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101-106 (1981) (citation omitted).
Accordingly, in the case of sub judice, it is plaintiff's burden to prove every element of compensability Id., at 54,283 S.E.2d, at 106 (citations omitted).
3. In order for plaintiff's claim to be compensable, she must sufficiently and convincingly establish that her carpal tunnel syndrome qualifies as an occupational disease within the meaning of G.S. § 97-53(13). No credible or convincing evidence was elicited from Dr. Kouba and there is no credible or convincing evidence in the medical records that plaintiff's carpal tunnel syndrome was peculiar to her employment or that her employment placed her at an increased risk of contacting carpal tunnel syndrome as compared to members of the general public not so employed.
4. Plaintiff has failed to sufficiently or convincingly prove that she suffers from an occupational disease within the meaning of G.S. § 97-53(13), in that she has failed to sufficiently meet her burden of proof on the issue of causation. There is no credible or convincing medical evidence or medical testimony which would indicate with a substantial degree of medical certainty that plaintiff's work at Morrison's Cafeteria caused or substantially contributed to her bilateral carpal tunnel syndrome.
5. Since plaintiff has failed to prove that she suffers an occupational disease within the meaning of N.C. § 97-53(13), her claim must be DENIED.
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
ORDER
1. In that plaintiff has not sufficiently or convincingly met the requirements of G.S. 97-53(13) for establishing the elements of occupational disease, she is not entitled to any disability compensation.
2. Plaintiff's claim for workers' compensation benefits is HEREBY DENIED.
3. Plaintiff and defendants shall divide the costs.
This case is ORDERED REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1996.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
JHB/nwm 07/19/96