Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with GAB Business Services as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage $359.98, which yields a compensation rate of $239.99, based upon the Form 22.
5. Plaintiff's last day of work for the defendant-employer was 26 February 1994.
6. Plaintiff received short term disability benefits for 26 weeks from 26 February 1994 through 27 August 1994 through an employer funded plan. She received $135.00 per week, for a total of $3,510.00. Defendant is entitled to a credit against any award of benefits.
7. Plaintiff received long term disability benefits from 27 August 1994 through 26 February 1996, at the rate of $1,068.58 per month through an employer-funded plan. Defendant is entitled to a credit against any award of benefits.
8. The issue for determination is whether plaintiff has contracted a compensable occupational disease, and if so, to what benefits may she be entitled under the Act.
***********
Based upon all the competent evidence in the record, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-five year old tenth grade educated female.
2. Plaintiff began working for defendant in February 1980 as a service operator in the clutch department. Plaintiff's job included measuring and cutting rubber with scissors.
3. In May 1980, plaintiff was laid off by defendant and recalled as a trim clutch operator in February 1981. Plaintiff transferred to a clutch service operator position in March 1981 and was reclassified as a finishing operator in April 1982. As a finishing operator, plaintiff sanded rubber golf grips to remove excess rubber after painting. Plaintiff remained in this position off and on between layoffs until July 1983.
4. In July 1984, plaintiff began working in the cord preparation department as a patch applicator operator and a dye cutter operator.
5. In her position as patch application operator, plaintiff put zinc stearate powder on the rubber strips to keep the strips from sticking in the machine. Toluene was in the machine to stick the patch to the grip, as well as a small amount of naphtha.
6. In July 1992, plaintiff was transferred to a janitor position, which required her to clean bathrooms, the break room, and offices. She utilized bleach and Comet cleanser in performing her duties. She did not perform janitorial duties on the production floor.
7. In July 1992, the employer contracted for outside janitorial services, and plaintiff returned to the cord preparation department as a patch applicator operator where she remained until 26 February 1994.
8. An Industrial Hygiene Air Monitoring Survey was performed for all aspects of defendant's plant in February of 1993. This study was performed by E.L.B. of Chapel Hill, North Carolina. Levels of respirable dust and total dust in plaintiff's work area were well below the OSHA permissible exposure level, and the results of air samples taken for organic vapors, such as Toluene, and naphtha, were well within OSHA acceptable limits.
9. Plaintiff began smoking cigarettes at age 18, and smoked approximately one and a half packs, or thirty cigarettes per day, until 1993. Since then, she has continued to smoke one-half pack of cigarettes per day.
10. In October 1992, plaintiff began experiencing a cough, for which she sought medical treatment from her family doctor, Dr. James M. Currin, Jr. She was diagnosed with bronchitis and prescribed antibiotics. Plaintiff saw Dr. Currin for two appointments in October 1992.
11. Plaintiff returned to Dr. Currin on 2 March 1993, complaining of a cough.
12. Plaintiff was next seen by Dr. Currin on 28 February 1994, with complaints of a cough and sputum production for two days. A chest x-ray was normal.
13. On 11 April 1994, Dr. Currin diagnosed plaintiff with acute pneumonitis, chronic bronchitis, allergic bronchitis, and allergic rhinitis. Dr. Currin opined plaintiff's chronic bronchitis was due to her smoking and was not caused or significantly contributed to by her work environment at Eaton Corporation.
14. During her treatment with Dr. Currin, plaintiff did not relate any of her symptoms to her work environment. Dr. Currin noted plaintiff's history of cigarette smoking and his repeated advice that plaintiff stop smoking.
15. On 29 April 1994, Dr. Currin referred plaintiff to Dr. Harold R. Weidaw, an expert in allergy immunology.
16. On 9 May 1994, Dr. Weidaw examined plaintiff, and after four visits through 31 July 1995, he diagnosed plaintiff with chronic obstructive pulmonary disease secondary to cigarette smoking. Based on Dr. Weidaw's testimony, the Full Commission finds that plaintiff's allergy and lung complaints were not caused by or significantly contributed to by her employment with defendant, and that her employment did not place her at an increased risk for developing these conditions.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of G.S. 97-53(13). This requires plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hanselv. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
2. Plaintiff failed to prove that her allergic and pulmonary condition is due to causes and conditions which are characteristic of and peculiar to her employment with defendant, or that her job placed her at an increased risk of developing her allergic and pulmonary condition. G.S. 97-53(13).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER