Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. EBI Companies was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issue to be determined is whether plaintiff has contracted a compensable occupational disease, and, if so, to what benefits is she entitled under the Act.
5. Plaintiff's average weekly wage is $330.29, which yields a compensation rate of $220.19 per week.
6. The parties stipulated the following exhibits into the record:
a. Exhibit 1 — Plaintiff's Answers to Interrogatories;
b. Exhibit 2 — Medical Records, 16 pages;
c. I.C. Forms 19, 33, 61, and 22; and
d. Exhibit 4 — Videotape of the job.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was sixty-four years old and had been employed with defendant-employer since 1980. She worked for approximately one year as the Sewing Room Supervisor. Between 1981 and 1996, plaintiff sewed samples for defendant-employer. In 1996, plaintiff was assigned to work in quality control, where she inspected garments and checked tickets.
2. During the summer of 1999, defendant-employer shipped 15,000 to 17,000 dozen shirts per day. Plaintiff regularly inspected 1,160 shirts every two and one-half hours during the course of her eight-hour shift. She frequently worked overtime. In the course of inspecting the garments, plaintiff had to flex her wrists, palms facing toward her, in order to flip the shirts. She steadily used her hands to pick up the garments to inspect them and to check the item tickets.
3. Defendant-employer prepared a videotape of plaintiff's job; however, the sewing job depicted therein is not relevant to this claim. The videotape also does not show plaintiff's hand movements in inspecting the shirts.
4. In the late summer of 1999, plaintiff began to experience pain and numbness in her hands. By November of 1999, she was experiencing numbness in both hands, hand sensations which disturbed her sleep, and symptoms while driving.
5. During the course of a physical examination on or about March 31, 2000 at Locust Medical Services, plaintiff mentioned her bilateral hand symptoms. Jeanette Vaughn, FNP, referred plaintiff to an orthopedist in Concord. Ms. Vaughn did not render an opinion regarding causation of plaintiff's carpal tunnel syndrome.
6. Plaintiff reported to her supervisor that she had been diagnosed with bilateral carpal tunnel syndrome.
7. On April 3, 2000, Dr. James Loftus of Northeast Orthopedics examined plaintiff. On April 14, 2000 and April 28, 2000 plaintiff was evaluated by Dr. Sue Nelson of Northeast Medical Center. Dr. Loftus only saw plaintiff on this one occasion and Dr. Nelson saw plaintiff twice. Dr. Loftus and Dr. Nelson had very limited knowledge of plaintiff's job duties. While both doctors related plaintiff's carpal tunnel syndrome to her job, the Commission gives less weight to their opinions on this issue.
8. Defendants retained Al Gorrod, an ergonomic evaluation specialist. He traveled to the plant on September 21, 2000 to observe plaintiff's job, following which he prepared a report. Based upon the observation of the job, Mr. Gorrod found the quality control job to be of low risk of repetitive motion.
9. On September 28, 2000, defendants submitted a copy of the job videotape, the ergonomic report from Al Gorrod, and plaintiff's medical records from Locust Medical Center to orthopedic surgeon Dr. David N. DuPuy of Charlotte Orthopedic Specialists. After reviewing this information, Dr. DuPuy stated that there was nothing in the quality control job which would have placed plaintiff at an increased risk of developing carpal tunnel syndrome. The Commission gives greater weight to the medical opinions of Dr. DuPuy since they were based upon more complete information.
10. Plaintiff underwent right carpal tunnel release surgery on July 14, 2000 and left carpal tunnel release surgery on September 15, 2000.
11. Based upon the competent medical evidence in the record, the quality control job did not cause plaintiff's carpal tunnel syndrome. Furthermore, plaintiff's job did not place her at an increased risk of developing carpal tunnel syndrome than members of the general public not equally exposed and plaintiff's condition was not characteristic of nor peculiar to her employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. GEN. STAT. § 97-53(13). Plaintiff is required to show that (1) the disease is characteristic of a trade or occupation; (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). In this case, plaintiff has failed to establish any of these elements by the greater weight of the evidence.
2. There is no evidence in the record to suggest that plaintiff suffered an injury by accident on or about April 5, 2000, within the meaning of N.C. GEN. STAT. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
3. Defendants shall pay expert witness fees as follows: $90.00 to Jeanette Vaughn, FNP, $ 180.00 to Dr. James Loftus, Jr., $180.00 to Dr. Nelson and $240.00 to Al Gorrod.
This the ___ day of October 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb