***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on 17 March 1999, the first date of the diagnosis relating to plaintiff's bilateral carpal tunnel syndrome and back pain to her work.
2. Kemper Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $424.73, which yields a compensation rate of $283.16 per week.
5. The parties stipulated the following documentary evidence:
a. I.C. Forms 18, 19, 33, 22, 33R, 22,
b. Plaintiff's Answers to Interrogatories, and
c. Plaintiff's Supplemental Answers to Interrogatories.
6. The parties further stipulated the following medical records into evidence:
a. Dr. Ronald Bush, 13 pages,
 b. Park Ridge Occupational Health / Park Ridge Hospital (Dr. David C. Trott), 18 pages,
c. Park Ridge Medical Associates, 24 pages,
d. Mountain Diagnostics, 7 pages,
e. Blue Ridge Bone and Joint Clinic, 1 page,
f. Mountain Neurological Center, 4 pages,
g. Dr. Andrew Rudins, 6 pages,
h. Dr. R. Christian Estes, 2 pages, and
i. Dr. Robert L. Smith, 29 pages.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 59 year old female high school graduate. She was employed as a lead person in the throwing department with defendant-employer where her duties included picking up tubes of raw thread, loading 30 tubes on a cart, loading 86 tubes on the machine by lacing the thread through eyes, removing empty tubes, and repairing thread when it would break. It took 20 minutes to load the 86 tubes on the machine, and plaintiff loaded and unloaded the machine five times per 12 hour shift, on average. Plaintiff had to reach overhead for most of the creeling, or loading the machine. She also had to make grasping or pinching movements to thread the machine, as well as flexing her neck to see above her shoulders to thread the machine. Plaintiff's normal work schedule was 36 hours one week and 48 hours the following week. She had four 15 minute breaks and a 30 minute lunch break per shift. Plaintiff worked for defendant-employer for 14 years.
2. In 1995, plaintiff sought treatment from Dr. Virginia Roberts for fibromyalgia. As a result of the condition, plaintiff was out of work for three to four days. Plaintiff was not specifically advised that this condition was related to her work.
3. On 23 June 1998, plaintiff sought treatment with her family physician, Dr. Ronald Bush, for low back pain after excess lifting at work. Following a physical exam, Dr. Bush prescribed Fiorcet for pain and recommended heat therapy. Plaintiff returned to Dr. Bush on 30 June 1998, reporting that her back was a lot better. Dr. Bush ordered x-rays which revealed degenerative arthritis, minimal degenerative disc disease and a slight narrowing of the disk between L5-S1.
4. On 17 November 1998, plaintiff transferred her family medical treatment from Dr. Bush to general practitioner Dr. Robert Smith, and underwent a routine physical examination. Dr. Smith diagnosed plaintiff with hypertension, hypercholesterolemia, and carpal tunnel syndrome.
5. Plaintiff returned to Dr. Smith on 17 March 1999 due to complaints of neck pain. She reported to Dr. Smith that her work at Barbour Threads required lifting and bringing down heavy spools of thread. Dr. Smith found plaintiff to have myofascial pain syndrome, which was likely due to overuse, for which he prescribed Relafen. On 26 March 1999, plaintiff began physical therapy as ordered by Dr. Smith.
6. On 12 May 1999, Dr. Smith provided plaintiff with an out of work note or a restriction of no heavy lifting from 12 May through 26 May 1999, due to mechanical back pain. On 2 June 1999, Dr. Smith authorized plaintiff to remain out of work until further evaluations of her neck.
7. On or about 12 May 1999, plaintiff reported to her employer that she had neck and upper back pain and arthritis in her neck as a result of repetitive doffing on the job. Human Resource Manager Cecil Nowlin prepared the I.C. Form 19 in this matter. According to Mr. Nowlin's records, there were other employees in the throwing department who received workers' compensation benefits for repetitive strain injuries as a result of the job duties.
8. On 17 May 1999, plaintiff was first seen at Park Ridge Occupational Health on referral by her employer. She reported pain in her shoulders, upper back and neck, which occurred as a gradual onset of pain. Plaintiff further reported no acute traumatic event, but related the condition to prolonged lifting and pulling boxes. Following an examination, Dr. David C. Trott, an expert in occupational health, diagnosed plaintiff with neck and upper back arthritis. A cervical MRI revealed spinal stenosis to a moderate degree at C3-4 and C5-6 due to small disk herniations. Lesser degrees of spinal stenosis were found at C4-5 and C6-7.
9. On 27 May 1999, Dr. Smith completed an Application for Disability Benefits for plaintiff, excusing her from work due to back and headaches, effective 9 May 1999. Although plaintiff turned this form in to her employer and they were aware of her limitations, defendant-employer did not offer any light or limited duty work to plaintiff.
10. On 20 July 1999, neurosurgeon Dr. Eric Rhoton of Mountain Neurological Center examined plaintiff on referral from Dr. Smith. Plaintiff complained of neck pain, which sometimes caused headaches. Following an examination, Dr. Rhoton diagnosed plaintiff with pain as a result of the cervical spondylosis and an associated myofascial pain. He found no neurologic deficit therefore surgery was not recommended.
11. From 27 August 1999 until 30 October 1999, plaintiff was treated at Blue Ridge Bone Joint.
12. On 2 September 1999, plaintiff returned to Dr. Smith due to ongoing back and neck pain. Dr. Smith recommended that plaintiff go on leave from defendant-employer, due to her inability to raise her hands over her head.
13. Plaintiff returned to Dr. Smith on 14 February 2000, due to ongoing back pain, right arm weakness, and pain in the scapula. Dr. Smith referred plaintiff to Dr. Andrew Rudins of Park Ridge Medical Associates, an expert in physical medicine and rehabilitation. After diagnostic testing on 28 February 2000, Dr. Rudins found evidence of mild carpal tunnel syndrome, particularly in the right, and myofascial type pain in the thoracic spine. Physical therapy was recommended as well as trigger point injections. In April 2000, plaintiff returned to Dr. Smith to request an orthopedic referral for her condition. Dr. Smith again found plaintiff to have chronic cervicalgia secondary to cervical spine stenosis from chronic disk herniations.
14. On 11 May 2000, plaintiff sought treatment at Hendersonville Orthopaedic Associates from Dr. R. Christian Estes for neck and bilateral arm numbness.
15. On 1 June 2000, plaintiff returned to Dr. Smith, with complaints of a neck mass. At her request, Dr. Smith referred her to Dr. Allen Huffman at Bowman Gray.
16. Dr. Trott opined that plaintiff's job in the throwing department was repetitive in nature based upon prior ergonomic evaluations of the job. He further found that the job duties would place plaintiff at an increased risk of developing upper back, neck and shoulder myofascial pain; however, he was unable to state whether plaintiff's condition was causally related to her employment.
17. Dr. Rudins opined that plaintiff's job was repetitive in nature, and as such placed her at an increased risk of developing the myofascial pain syndrome. He further found that plaintiff's employment significantly contributed to her current condition. Dr. Rhoton found that plaintiff's job duties placed her at an increased risk of developing the cervical spondylosis and osteophytes, as well as developing the myofascial pain syndrome, and also found that plaintiff's job contributed to her condition.
18. Dr. Craig Brigham, an orthopedic surgeon, testified that he disagrees with the American Board of Rheumatology, and that it is his belief that myofascial pain or fibromyalgia are not true medical diagnoses. However, less weight is given to his opinion. Instead, greater weight is given to the opinion offered by the occupational medicine physicians.
19. Defendant-employer paid plaintiff disability payments of $100 per week for 13 weeks from an employer-funded plan.
20. The competent evidence in the record supports a finding that plaintiff's carpal tunnel syndrome and myofascial pain syndrome in the back, neck and shoulders were caused or significantly aggravated by plaintiff's job duties, that plaintiff was placed at an increased risk over that of the general public outside of the employment of developing these conditions as a result of her employment, and that these conditions were characteristic of, or peculiar to her job with defendant-employer.
21. Plaintiff has not reached maximum medical improvement.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101(1981). In the instant case, plaintiff has established these elements.
2. As a result of the compensable occupational diseases, plaintiff is entitled to temporary total disability compensation at the rate of $283.16 per week for the period from 12 May 1999 and continuing. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit for disability payments already paid to plaintiff. N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $283.16 per week for the period from 12 May 1999 and continuing until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum, subject to a credit for disability compensation already paid to plaintiff by defendants.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel. Thereafter, defendants shall pay directly to plaintiff's counsel every fourth weekly check due to plaintiff.
3. Defendants shall pay medical expenses incurred or to be incurred in the future when bills for the same have been approved, in accordance with the provisions of the Act.
4. As plaintiff has not reached maximum medical improvement, this Opinion does not address the issue of permanent partial disability, if any. However, in the event that the parties should be unable to agree on the amount of permanent disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
5. Defendants shall pay the costs, including expert witness fees as follows:
a. in amount of $200.00 to Dr. Craig Brigham,
b. in amount of $250.00 to Dr. Eric Rhoton,
c. in amount of $200.00 to Dr. Virginia Roberts,
d. in amount of $300.00 to Dr. Andrew Rudins,
e. in amount of $180.00 to Dr. Robert L. Smith, and
f. in amount of $200.00 to Dr. David Trott.
This the ___ day of April, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER