***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award, with some modification.
The undersigned finds as fact and concludes as matter of law the following which were entered by the parties at the hearing as:
 STIPULATIONS
The parties are subject to and bound by the provisions of The North Carolina Workers' Compensation Act.
An employer-employee relationship existed between the parties at all relevant times.
The carrier on the risk is Wausau Insurance Company.
Plaintiff's average weekly wage at all relevant times was $368.37, yielding a compensation rate of $245.70.
The date of plaintiff's alleged occupational injury was 22 January 1998. The following were stipulated in evidence:
a) Medical Records.
The issues to be considered are:
 Did plaintiff sustain an injury by accident arising out of and in the course of her employment with defendant-employer?
Did plaintiff develop an occupational disease?
Does plaintiff suffer from any disability?
 ***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefore, the Full Commission makes the following:
 FINDINGS OF FACT
Plaintiff was born on 2 October 1953 and was 46 years old on the date of the evidentiary hearing.
Plaintiff began working for defendant-employer in March 1995. Prior to her employment with defendant-employer, plaintiff worked for Dixie Yarn for several months. Prior to Dixie Yarn, plaintiff worked for Perdue for 14 years as a chicken "shoulder cutter."
Plaintiff worked approximately six days per week with defendant-employer as a seamer. A robotic arm brought plaintiff a piece of glass at her workstation. Plaintiff would then push a button to release the suction of the robotic arm, seam the glass and, then push the glass with her right hand into a washer. Plaintiff demonstrated at the hearing the motion used in her position as a seamer, but did not state how often she used her arms or how often she flexed her elbow. No testimony was elicited as to the number of pieces of glass plaintiff worked with each day.
Plaintiff was occasionally rotated to other positions with defendant-employer. She would unload glass at the end of the machine where she typically worked as a seamer. She was rotated to this job every several days. Plaintiff did not indicate how many pieces of glass she typically unloaded per day or hour while rotated into this position.
On 22 January 1998, plaintiff had been assigned to unload glass for two hours. At the end of her shift, plaintiff's left arm was hurting. That night according to plaintiff it began to swell.
Nothing unusual was reported by plaintiff in her work duties on 22 January 1998.
Plaintiff sought care with numerous doctors after 22 January 1998. None of the doctors plaintiff presented to wrote her out of work, until she had an appointment with Dr. Robert C. Martin on 8 October 1998. Dr. Martin wrote the plaintiff out of work on 8 October 1998.
Dr. Martin performed surgery on plaintiff on 19 November 1998 and she was released to light-duty in February 1999. After being released to light-duty work, plaintiff had a nervous breakdown. She has been treated for depression, alcohol withdrawal, hallucinations, and hearing voices.
Plaintiff alleged that she was unable to return to work at defendant-employer after her mental problems had resolved, because no work was available. She testified that she made attempts to find other employment. In her answers to interrogatories from defendants, plaintiff denied an ability to work. She admitted filling out three or four job applications during the last seven months preceding the deputy commissioner hearing. She has applied for Social Security disability benefits.
Plaintiff alleged that, for months at a time, her right arm was locked in a completely flexed position and she was unable to move it. Plaintiff was able, however, to press the button to release the suction from the robotic arm and grab the glass in her job as a seamer even if her arm was locked up. Plaintiff maintained that she could not straighten her arm while working either as seamer or unloading glass. In demonstrating the motion used in her employment at the evidentiary hearing, the Deputy Commissioner noted that plaintiff straightened her arm repeatedly. Dr. Martin who examined plaintiff found her right arm and left arm to be the same size and adequately muscled. If an arm is not moved for a length of time, it atrophies and shrinks. Plaintiff's testimony on this issue is not accepted as credible.
Dr. Robert C. Martin, an orthopaedic surgeon, began treating plaintiff on 8 October 1998.
Plaintiff was referred to Dr. Martin by Dr. Chester at the Tarboro Clinic. When plaintiff originally presented, Dr. Martin took a medical history from her and performed a physical examination. Dr. Martin placed plaintiff on a corticosteroid medication and told her to follow up with him.
On his initial consultation, it was difficult for Dr. Martin to form an opinion as to the exact nature of plaintiff's problem or its etiology. Plaintiff related to him that she was employed on a manufacturing line; however, plaintiff only gave him a "rough description" of her job.
When Dr. Martin next saw the plaintiff on 20 October 1998, plaintiff told Dr. Martin that her elbow condition had improved. Plaintiff also informed him that she had had an MRI taken by a different orthopaedic surgeon and the MRI was normal. Dr. Martin diagnosed plaintiff with lateral epicondylitis or possibly an intra-articular process. He continued to keep plaintiff out of work.
Plaintiff next presented to Dr. Martin on 3 November 1998. Dr. Martin sent plaintiff to have a bone scan of her left elbow joint. The bone scan showed an increased uptake in the area of the lateral elbow joint.
Dr. Martin performed arthroscopic surgery on plaintiff's left elbow and performed a partial synovectomy and removal of a small loose body on 19 November 1998. According to Dr. Martin, the condition is usually precipitated by some injury to the joint.
Plaintiff's attorney sent Dr. Martin a repetitive motion medical questionnaire on 18 May 1999. Dr. Martin answered this questionnaire based on the information he obtained through the history supplied by plaintiff regarding her job, job requirements, and functions. At his deposition, Dr. Martin was shown a job description prepared by the defendant-employer. It was Dr. Martin's opinion that it was "possible" that plaintiff's job had contributed to the condition in her elbow.
Dr. Martin reiterated at the hearing that his understanding of plaintiff's job was based solely on the information provided by her. Based on the plaintiff's information, Dr. Martin thought at the time that her job was "repetitive." Dr. Martin, however, was not aware of the number of repetitions plaintiff may have been involved in on a typical day. He could not recall (if he ever knew) how long plaintiff held her job with defendant-employer or the specific physical movements plaintiff performed in her job. Dr. Martin was also unaware of plaintiff's previous employment.
Dr. Martin never noticed that plaintiff's arm was locked in an upright position, or locked in a flexed position with her palm facing her shoulder.
Dr. Martin released plaintiff to light-duty work on 16 February 1999 with restrictions. She was not to lift over 15 pounds using her left arm. When Dr. Martin received the questionnaire from plaintiff's attorney, there were no other documents with it. Dr. Martin answered questions numbers 2 and 3 of the questionnaire based solely on plaintiff's report to him. Dr. Martin did not use available responses on the questionnaire, but wrote in new categories. In response to the question of whether plaintiff's job significantly contributed to the development of the condition, he wrote, "may have." This "may have" is equivocal.
The loose body or cartilage in plaintiff's elbow could have been from an injury or part of the breakdown of the joint as well as due to the onset of an occupational disease. Orthopaedic doctors "estimate" where loose bodies may have come from, but it is not always possible to make an exact determination.
Plaintiff has presented to a variety of doctors over the past several years. There is no evidence of record that convincingly connects the etiology of plaintiff's pain or alleged occupational injury to her work duties with defendant-employer. Dr. Andrew E. Chester's medical notes from 22 June 1998 through 22 September 1998 mention left arm/left elbow pain, but do not give any etiology. Dr. Frances M. McCarthy's notes from 19 July 1998 state that plaintiff's left elbow condition has an unknown etiology. Dr. Robert L. Wortmann's letter dated 7 January 1999 notes that plaintiff's elbow pain is consistent with a myofacial pain syndrome, but he does not give any indication of its etiology.
Dr. Martin stated in his deposition that "it is possible that the job that Ms. Jones did could have contributed to the condition in her elbow." Dr. Martin based this opinion solely on what the plaintiff told him about her job when he took her medical history. Dr. Martin characterizes the job description given by plaintiff as a "rough description." Dr. Martin's notes, his testimony, and his response to the questionnaire are equivocal, and the Full Commission does not find that they prove plaintiff's claim by the greater weight. There is insufficient evidence that plaintiff's employment was a significant cause of her alleged occupational disease. The greater weight of the competent evidence does not establish that plaintiff's work was sufficiently repetitive to cause her condition.
Plaintiff has not shown an inability to work since her release to light-duty work on 16 February 1999.
 ***********
The forgoing findings of fact and conclusions of law engender the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove that she sustained an occupational disease arising out of and in the course of her employment with defendant-employer. G.S. § 97-53(13); Hansel v. Sherman Textiles,304 N.C. 44, 283 S.E.2d 101 (1981); Booker v Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
2. Plaintiff failed to prove that she sustained an injury by accident on 22 January 1998. G.S. § 97-2(6).
 *********** AWARD
Plaintiff's claim is denied.
The parties shall pay their respective costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER