* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employee is Robbie Shawn Oliver.
2. The employer is Ball Corporation.
3. The carrier at risk is ITT Specialty Risk Services.
4. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the Workers' Compensation Act. An employment relationship existed between employer and employee on or about January 22, 2002, the date of the alleged compensable injury, at the time of the alleged specific traumatic incident in November 2001, and at all other relevant times.
5. The parties stipulated to an Industrial Commission Form 22 (wage chart), which indicates total gross wages earned for the qualifying period of $72,035.73 for 365 days. This results in a daily rate of $197.36, an average weekly wage of $1,385.30, and a maximum weekly compensation rate of $654.00.
6. Plaintiff's medical records are stipulated into evidence as Stipulation No. 1.
7. The transcript of plaintiff's January 22, 2002, recorded statement is stipulated into evidence as Stipulation No. 2.
8. Plaintiff contends the issues to be heard are as follows:
 a. Whether plaintiff sustained a compensable injury by accident or specific traumatic incident on or about November 2001;
 b. Whether plaintiff's neck injury constitutes a compensable occupational disease arising before or around January 2002;
 c. If his injury is compensable, either as a specific traumatic incident, an occupational disease or both, to what amount of past and future compensation is plaintiff entitled as a result of his compensable injury; and
 d. To what medical treatment is plaintiff entitled in order to effect a cure or to provide relief for his allegedly compensable injury.
9. Defendants contend the issues are as follows:
 • In addition to the issues framed by plaintiff in Paragraph 8 above, defendants contend that there is an issue as to whether any claim based on the alleged specific traumatic incident in November 2001 is barred by N.C. Gen. Stat. § 97-22.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 34 years old. Plaintiff began working for defendant-employer in 1998 as a material handler. His job primarily involves driving a forklift and stacking pallets of finished aluminum beer cans and other materials.
2. Plaintiff's job requires him to move his neck up and down and from side to side and shift gears each time he drives the forklift.
3. At the hearing before the Deputy Commissioner, plaintiff testified that sometime in November 2001, he injured his neck when he reached to move the gearshift lever on the forklift he was operating. Plaintiff testified he did not report this alleged incident to anyone because he thought it was just part of the pain he had experienced for the last year or so and did not really know what had specifically happened to cause the onset of pain. Plaintiff did tell Mr. Wood, the floor supervisor, that his left side was hurting, but did not tell him that it was due to any particular incident.
4. On November 19, 2001, plaintiff presented to Dr. Charles R. Stewart, a neurologist, complaining of recurring pain on the left subscapular region and radiating around his left chest wall. Plaintiff did not mention a specific injury to Dr. Stewart.
5. On January 10, 2002, plaintiff presented to Dr. Gregory Crisp for a pain control center evaluation on referral from Dr. Stewart. Plaintiff told Dr. Crisp that the pain had been present for about two years and he knew of no precipitating event. A thoracic MRI and chest x-ray revealed no abnormalities, and a cervical MRI was ordered.
6. On January 17, 2002, a cervical MRI revealed a small disk protrusion at the C6-7 level with the left C6 nerve root slightly compressed at the C6-7 level and mild stenosis at that level.
7. On January 23, 2002, defendants completed an Industrial Commission Form 19 (Employer's Report of Employee's Injury orOccupational Disease to the Industrial Commission), which cited "repetitious bending of neck and bouncing around on fork truck causing severe pain to left shoulder/pressure on nerve in neck" as the reported cause of plaintiff's injury. On the same day, plaintiff submitted an Industrial Commission Form 18 (Employer'sReport of Employee's Injury or Occupational Disease to theIndustrial Commission), which cited "rep. bending/bouncing-strain lt. shldr./neck" as the cause of injury.
8. On February 20, 2002, Barbara Taylor took a recorded statement from plaintiff on behalf of defendants. In that statement, Ms. Taylor asked plaintiff whether he could recall any particular incident when his pain actually started, or whether it was something that he felt happened over time. Plaintiff responded, "Over time, I'm not saying it happened that day, I think it, just over the last couple years, me repetitiously doing that, you know, I mean, it's just eat away on those, I guess on the disk in my neck."
9. On February 20, 2002, plaintiff presented to Dr. Kyle Cabbell, a neurologist at Guilford Neurological Associates, P.A., in Greensboro, North Carolina. Dr. Cabbell reviewed plaintiff's MRI results and diagnosed him with a displaced disk at C6-7 on the left side with compromise of the C6-7 nerve root. Plaintiff did not mention a specific incident to Dr. Cabbell that led to his symptoms. Dr. Cabbell recommended an anterior cervical diskectomy and arthrodesis at C6-7, which he performed on February 25, 2002.
10. Plaintiff filed a second Form 18 on March 26, 2002, which indicated that his neck injury was caused by "damaging neck movement and posture."
11. In his deposition testimony, Dr. Cabbell opined that plaintiff's job, as it was described to him, could lead to increased pressure being put on the cervical disks and, in turn, this pressure could lead to spondylosis and degenerative changes in the cervical spine. According to Dr. Cabbell, these changes could put the disks at an increased risk of rupture.
12. Dr. Cabbell further opined that the herniated disk at C6-7 caused plaintiff's neck problems; however, he was unable to tell, based on the information he had at his deposition, whether there were degenerative changes or spondylosis at the C6-7 level prior to the herniation of that disk. Neither the radiologist who prepared the MRI report nor Dr. Cabbell recorded the existence of spondylitic or degenerative changes at C6-7 in their written reports. Therefore, there is no competent evidence to show that plaintiff suffered from degenerative changes or spondylosis at the C6-7 level at the time the disk herniated.
13. Dr. Cabbell opined that he could not conclusively determine when plaintiff's disk ruptured and when the nerve root was impinged. According to Dr. Cabbell, one can have a ruptured disk and never need an operation. Dr. Cabbell opined that it was extremely unlikely that plaintiff suffered a ruptured disk shortly before plaintiff's first visit. According to Dr. Cabbell, the only way to tell when the disk herniated was to have a film before plaintiff was symptomatic and a film afterwards. Although efforts were made to locate a prior MRI film of plaintiff, the parties never introduced one into evidence. Dr. Cabbell further opined that being a forklift operator over a period of time would not make you more likely to have a ruptured disk.
14. Consequently, there is no competent evidence of a causal relationship between plaintiff's employment and the condition for which he required treatment.
15. Plaintiff returned to his regular job with defendant-employer without restrictions on or about June 20, 2002, and as of the hearing before the Deputy Commissioner, he remained so employed.
16. The Full Commission finds that the totality of the credible evidence of record, including the fact that plaintiff did not report a specific incident to defendant-employer or to his doctors, fails to establish that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident or otherwise on or about November 2001.
17. Based upon the totality of the credible evidence of record, the Full Commission further finds that plaintiff has failed to prove that his employment with defendant-employer exposed him to an increased risk of developing any disease or condition or significantly contributed to any disease or condition that he may now have.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, the employee must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Townof Valdese, 92 N.C. App. 222, 224; 374 S.E.2d 116, 118 (1988),disk. review denied, 324 N.C. 337; 378 S.E.2d 799 (1989).
2. Under the specific traumatic incident theory, plaintiff must prove that the injury occurred at a judicially cognizable time, although not necessarily at a specific hour or day. Fish v.Steelcase, Inc., 116 N.C. App. 703, 707; 449 S.E.2d 233, 237
(1994), cert. denied, 339 N.C. 73; 454 S.E.2d 650 (1995);Richards v. Town of Valdese, supra.
3. Plaintiff has failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident or specific traumatic incident as a result of the work assigned on or about November 2001, or at any other time. N.C. Gen. Stat. §97-2(6); Causby v. Bernhardt Furniture Co., 83 N.C. App. 650;351 S.E.2d 106 (1986).
4. An occupational disease is defined as any disease "which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of employment." N.C. Gen. Stat. § 97-53(13).
5. Three elements are necessary to show the existence of a compensable occupational disease: "(1) the disease must be characteristic of persons engaged in a particular trade or occupation in which the plaintiff is engaged; (2) the disease must not be an ordinary disease of life to which the public is equally exposed; and (3) there must be a causal connection between the disease and the plaintiff's employment." Jarvis v.Food Lion, 134 N.C. App. 363, 367, 517 S.E.2d 388, 391 (1999), citing Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101
(1981).
6. A disease is characteristic of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question. Booker v. MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979). Plaintiff has failed to show that his employment with defendant-employer exposed him to an increased risk of developing any disease or condition that he may now have. Therefore, plaintiff does not have an occupational disease that was due to causes and conditions characteristic of and peculiar to his employment and which was not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13); Bookerv. Medical Center, supra.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and is hereby denied.
2. Each party shall bear its own costs of this proceeding.
This the __ day of June 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER