* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; to receive further evidence or to rehear the parties or their representatives; accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On the alleged date of injury, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. The PMA Insurance Group is the compensation carrier on the risk.
6. Deposition testimony from the following individuals has been entered into the record: Mr. Stephen Carpenter; Dr. Margaret Dorfman; Dr. John Kolkin; Dr. Joel Krakauer; Mr. Robert Manning; and Mr. Vern Schmickley.
7. Stipulations 1-3, plaintiff's exhibits 1-4, and defendants' exhibits 1-6 have been entered into the record.
8. Plaintiff's average weekly wage is $550.04.
9. Plaintiff's alleged date of injury is May 15, 2003.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a 60 year old high school graduate. The plaintiff is right hand dominant.
2. Plaintiff had been regularly employed all of her life in clerical jobs with no significant history of problems with hand, wrist or arm pain. Although plaintiff had more than a 20-year history of depression, it was never a disabling condition.
3. At the time of the hearing before the Deputy Commissioner, the plaintiff testified that she began working in the Trust Department for defendant-employer in 1995. In 2001 she was transferred to the Item Processing Department where plaintiff's job duties included taking bundles of thousands of checks per shift and searching through them to manually remove all metal such as paper clips or staples. Plaintiff was also required to personally inspect each check for adding machine tape. After searching through all the checks to remove all metal, plaintiff put each bundle through a metal detector to ensure that no metal remained. If metal was detected, the process of searching through the checks was then repeated until the metal detector determined no metal remained. Plaintiff's other duties involved computer keying of data from checks. On Mondays, plaintiff keyed information for about 45 minutes during the shift. On other shifts, keying took 20 minutes or less.
4. At the hearing before the Deputy Commissioner, the plaintiff testified that the defendant-employer imposed production requirements upon workers in plaintiff's position. Plaintiff was required to log her production. The expected production during a particular shift was written on a board in plaintiff's work area. On average, plaintiff was required to process in excess of 40,000 checks per shift.
5. On April 9, 2003, plaintiff received a written warning from her supervisor, Annette Crenshaw, for failure to process all of the work presented to her. Plaintiff's responsive memorandum made no mention of problems with her hands.
6. The plaintiff testified at the hearing before the Deputy Commissioner that in 2003 she began experiencing tingling in her right hand that eventually advanced into swelling in both wrists, both hands and arms, along with numbness, pain, and weakness in her hands. Plaintiff further stated that she had never suffered from these symptoms prior to her work with defendant-employer.
7. On July 31, 2003, the plaintiff reported to the employer's physician, Dr. Robert Clayton, complaining of left hand numbness and pain. Dr. Clayton instructed plaintiff to wear her splint and referred plaintiff to Dr. Pamela Whitney, neurologist for nerve conduction tests. After the nerve conduction test, Dr. Whitney diagnosed carpal tunnel syndrome. Plaintiff was then referred to Dr. John Kolkin, a hand specialist.
8. Plaintiff presented to Dr. Kolkin on August 14, 2003 and on September 4, 2003. Dr. Kolkin diagnosed plaintiff with CMC joint arthritis and probable bilateral carpal tunnel syndrome. He stated twice in his notes that plaintiff's symptoms were "probably a work-related phenomenon." Dr. Kolkin further opined that plaintiff's employment with defendant-employer might have contributed to her carpal tunnel syndrome, but he did not believe that the employment was a substantial or primary causal factor in the development of the condition. As he had not examined plaintiff since September 2003, he declined to offer an opinion on plaintiff's condition as of the date of his deposition.
9. At the hearing before the Deputy Commissioner, the plaintiff testified that she continued to work but her pain level increased and although she took pain medication, often the pain was enough to make her cry while working.
10. On August 3, 2004, the plaintiff presented to Dr. Joel Krakauer, board-certified hand specialist, complaining of wrist pain and numbness and tingling in both hands. Dr. Krakauer diagnosed plaintiff with degenerative arthritis and bilateral carpal tunnel syndrome. Dr. Krakauer performed carpal tunnel release surgery on plaintiff's wrists on August 13, 2004 and October 11, 2004.
11. The plaintiff testified at the hearing before the Deputy Commissioner that following her bilateral surgeries, she attempted to return to work with significant medical restrictions limiting her hours of employment and keyboarding activities. Over a period of months, plaintiff's return to work attempts all proved unsuccessful, as her bilateral hand and arm pain increased with activity.
12. Dr. Krakauer opined that plaintiff's symptoms were due to causes and conditions characteristic of and peculiar to her employment with defendant-employer. He further stated that plaintiff's symptoms were not an ordinary disease of life to which the general public is equally exposed. Dr. Krakauer testified to a reasonable degree of medical certainty that plaintiff's job duties, more likely than not, caused her carpal tunnel syndrome.
13. Dr. Krakauer stated plaintiff has reached maximum medical improvement, and her condition is more likely than not permanent. Dr. Krakauer assigned plaintiff a permanent partial impairment rating of 15% to both hands and imposed permanent work restrictions, which include no use of the keyboard for more than half an hour per day and no lifting more than five pounds. Dr. Krakauer further opined that plaintiff is not able to maintain regular attendance in any type of employment.
14. Dr. Krakauer is plaintiff's current treating physician for her carpal tunnel syndrome. He has followed plaintiff over an extended period of time and has seen her more recently for this condition than plaintiff's other doctors. The Full Commission gives greater weight to Dr. Krakauer's opinion than to the opinions of the other doctors who testified regarding her carpal tunnel syndrome.
15. Plaintiff has treated with Dr. Margaret Dorfman, a psychiatrist since 1995. Dr. Dorfman opined to a reasonable degree of medical certainty that plaintiff's preexisting depression was substantially aggravated by the onset of her bilateral hand and arm pain. Dr. Dorfman also testified that but for plaintiff's hand and arm pain, plaintiff would not have become disabled at the time that she did. In her medical opinion, plaintiff is permanently and totally disabled from all competitive employment. Dr. Dorfman determined plaintiff totally disabled in the spring of 2005.
16. Dr. Dorfman is plaintiff's treating psychiatrist, having knowledge of her condition both before and since the onset of her chronic hand and arm pain. Dr. Dorfman has followed plaintiff over an extended period of time and currently continues to treat plaintiff.
17. Verne G. Schmickley is a licensed psychologist. He examined plaintiff on one occasion on behalf of defendants. Mr. Schmickley opined that plaintiff's depression was not caused by her hand and arm pain. He based this view on the contention that physical conditions do not exacerbate depression.
18. The Full Commission gives greater weight to Dr. Dorfman's opinion than to Mr. Schmickley's opinion. Dr. Dorfman is a psychiatrist who has treated plaintiff for over a decade. Mr. Schmickley is a psychologist who saw plaintiff on only one occasion.
19. The Full Commission finds that plaintiff's depression was aggravated by her compensable occupational disease.
20. On June 16, 2005, plaintiff presented to Mr. Robert Manning, a rehabilitation counselor. Mr. Manning evaluated the plaintiff on behalf of defendants. Mr. Manning concluded that plaintiff is capable of work despite her substantial restrictions. The theoretical jobs he identified for plaintiff were also outside of plaintiff's work restrictions. Further, Mr. Manning failed to take into account plaintiff's psychiatric symptoms in rendering his opinions. Therefore, the Full Commission gives little weight to Mr. Manning's testimony.
21. Mr. Carpenter is a vocational rehabilitation counselor who examined plaintiff on August 23, 2005, performing a number of vocational tests. From his review of the medical restrictions of Dr. Krakauer and the result of his actual vocational testing, Mr. Carpenter concluded plaintiff is totally disabled from all competitive employment. He explained there are no jobs within plaintiff's work restrictions and significant limitations identified in testing. Both Dr. Krakauer and Dr. Dorfman agreed with Mr. Carpenter's assessment. Mr. Carpenter's testimony is found to be credible and is given greater weight than that of Mr. Manning.
22. The Full Commission finds the plaintiff to be credible.
23. The competent evidence in the record and the greater weight of the medical evidence establishes plaintiff's carpal tunnel syndrome is due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and is not an ordinary disease of life to which the public is equally exposed. Plaintiff's employment with defendant-employer was a significant and substantial contributing factor in the development of the above condition and but for her employment with defendant-employer, plaintiff would not have developed carpal tunnel syndrome.
24. The competent evidence in the record establishes that the plaintiff is unable to maintain regular attendance and production in any employment and unable to sustain the duties required for full-time or competitive employment as a result of her compensable occupational disease.
25. Defendants have presented no credible evidence that competitive work is available for someone of plaintiff's age, education, work experience, physical and/or mental limitations, vocational interests and aptitudes, or that plaintiff could obtain suitable employment in the open and competitive market.
26. As a result of plaintiff's occupational disease, combined with plaintiff's age, education, work experience, work restrictions, and significant preexisting medical and psychiatric conditions, plaintiff has been unable to return to and sustain any previously held employment.
27. The Full Commission finds that because of plaintiff's occupational disease and resulting work restrictions, coupled with her age, education and work experience, plaintiff is incapable of earning her pre-injury wages with defendant-employer or with any other employer. Plaintiff has been completely unable to earn any wages since August 13, 2004.
28. The treatment rendered by Dr. Krakauer and Dr. Dorfman has been reasonable and necessary to effect a cure, give relief from pain, or lessen the period of plaintiff's disability.
29. Plaintiff's average weekly wage of $550.04 yields a compensation rate of $366.71.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). This requires plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101(1981). In the instant case, plaintiff has carried the burden of proof to establish that she contracted the occupational disease of bilateral carpal tunnel syndrome as a direct result of her employment with defendant-employer, that her job duties significantly contributed to her development of the occupational disease and that her employment with defendant-employer placed her at an increased risk of developing these conditions compared to the general public. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff's compensable occupational disease aggravated her depression. N.C. Gen. Stat. § 97-2(6).
3. An employee is disabled if she is unable to earn the same wages that she had earned before her injury. The employee is entitled to total and permanent disability when one of the following applies: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, or lack of education, or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Prod. Distrib., 108 N.C.App. 762, 425 S.E.2d 454
(1993). In the present case, the medical evidence of record establishes that plaintiff could not maintain regular attendance in any type of employment, thus, it would be futile for plaintiff to search for employment given her age, lack of education and work experience.
4. As a result of plaintiff's occupational disease and her aggravated depression, defendants shall pay plaintiff temporary total disability compensation at the compensation rate of $366.71 per week from August 13, 2004 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for treatment of her bilateral carpal tunnel syndrome for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall pay to plaintiff temporary total disability compensation at the rate of $366.71 per week beginning August 13, 2004 until further Order of the Commission. Compensation due that has accrued shall be paid in a lump sum to plaintiff, subject to the attorney's fee awarded herein.
2. Defendants shall pay all medical expenses incurred and to be incurred as a result of plaintiff's bilateral carpal tunnel syndrome and depression for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this Award is hereby approved for plaintiff's counsel. Twenty-five percent (25%) of the lump sum due plaintiff shall be deducted therefrom and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs of this action.
This the ___ day of January 2006.
 S/___________________ PAMELA T. YOUNG, COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ BUCK LATTIMORE COMMISSIONER